UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Allison Karen, et al.,

                    Plaintiffs

v.

United Services Automobile Association, et al.,

                    Defendants

Case No. 2:24-cv-02089-CDS-DJA

**Order Granting Defendants'
Motions to Dismiss**

[ECF Nos. 17, 24]

Plaintiffs Allison and Gudrun Karen bring this action against defendants United States Automobile Association (USAA), USAA Casualty Insurance Company (USAA Casualty), Garrison Property and Casualty Insurance Company, and Auto Injury Solutions, Inc./CCC[1] (collectively, defendants) and allege the following causes of action: (1) declaratory relief, (2) breach of contract, (3) exploitation of the elderly, (4) violation of Nevada's prohibition on unfair claims practices, and (5) bad faith. Compl., ECF No. 1. USAA, USAA Casualty, and Garrison filed a partial motion to dismiss. First mot. to dismiss, ECF No. 17. That motion is fully briefed. *See* Opp'n, ECF No. 20; Reply, ECF No. 23. AIS/CCC filed a separate motion to dismiss. Second mot. to dismiss, ECF No. 24. That motion is also fully briefed. *See* Opp'n, ECF No. 27; Reply, ECF No. 32. For the following reasons, I grant USAA, USAA Casualty, and Garrison's partial motion to dismiss and I grant AIS/CCC's motion to dismiss for lack of personal jurisdiction.

---

[1] Auto Injury Solutions is now known as CCC Intelligent Solutions, Inc., as a result of a merger between the two companies. ECF No. 24 at 1 n.1. For purposes of this motion, CCC states it will respond on behalf of Auto Injury Solutions and that "should this matter survive dismissal, a substitute of entities will be filed." *Id.* The court will refer to this party as "AIS/CCC."

1    I.    Background[2]

2        Plaintiffs allege that they were involved in two motor vehicle accidents that were both

3    caused by the "negligence of an under-insured motorist": the first on April 29, 2023, and the

4    second on January 12, 2024. ECF No. 1 at ¶¶ 10, 11. At the time of the accidents, the plaintiffs

5    were insured with USAA with uninsured motor policy limits of "$1,000,000.00 per person

6    $1,000,000.00 per accident." *Id.* at ¶ 16. Plaintiffs were also insured with USAA for a "stackable

7    medical payment policy limit of $100,000.00 per person per vehicle." *Id.* at ¶ 17. The combined

8    policy limits for the underinsured motorist policies identified for both the plaintiffs' accidents

9    total $2,000,000 and the medical payment policies identified a total for both accidents of

10   $800,000. *Id.* at ¶ 20. Despite their insurance policies and their demand for settlement, the

11   plaintiffs allege that the defendants "delayed making an offer to settle" and "delayed making

12   payments to the plaintiffs to cover the incurred medical expenses." *Id.* at ¶¶ 22, 23.

13   II.   Legal standard

14       The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain

15   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

16   Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which

17   relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

18   pleading must give fair notice of a legally cognizable claim and the grounds on which it rests,

19   and although a court must take all factual allegations as true, legal conclusions couched as

20   factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires

21   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

22   will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual

23   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

24   556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

25

26   [2] As the complaint provides no facts section, the court does its best to parse through the filing to summarize the factual allegations. Citation to the complaint is to provide background and does not serve as a finding of facts.

1    when the plaintiff pleads factual content that allows the court to draw the reasonable inference

2    that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a

3    sheer possibility that a defendant has acted unlawfully." *Id.*

4          If the court grants a motion to dismiss for failure to state a claim, leave to amend should

5    be granted unless it is clear that the deficiencies of the complaint cannot be cured by

6    amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a

7    court should "freely" give leave to amend "when justice so requires," and in the absence of a

8    reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated

9    failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing

10   party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*,

11   371 U.S. 178 (1962).

12   **III.    Discussion**

13         **A.  USAA, USAA Casualty, and Garrison's partial motion to dismiss is granted.**

14         USAA, USAA Casualty, and Garrison filed a motion to dismiss the following claims: (1)

15   declaratory relief, (3) exploitation of the elderly, (4) violation of Nevada's Unfair Claims

16   Practices Act, and (5) bad faith. ECF No. 17 at 2. I address each claim in turn.

17         USAA, USAA Casualty, and Garrison first argue that the plaintiffs fail to properly plead

18   a claim for declaratory relief under the Declaratory Judgment Act because the plaintiffs did not

19   demonstrate why this relief would be proper under relevant case law. *Id.* at 4–5. The Declaratory

20   Judgment Act states, "[i]n a case of actual controversy within its jurisdiction . . . any court of the

21   United States . . . may declare the rights and other legal relations of any interested party seeking

22   such declaration." 28 U.S.C. § 2201(a). The Ninth Circuit has outlined a two-part test to

23   determine whether the court may exercise its jurisdiction under the Declaratory Judgment Act.

24   *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). First, the court must inquire

25   whether there is an "actual case or controversy within its jurisdiction." *Id.* Second, the court

26   must decide whether to exercise its jurisdiction by analyzing the *Brillhart* factors: (1) avoidance

of needless determination of state law issues, (2) discouragement of the use of declaratory

judgments to forum shop, and (3) avoidance of duplicative litigation. *Chamberlain v. Allstate Ins.*

*Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). A

district court's exercise of jurisdiction over declaratory relief actions is discretionary. The Ninth

Circuit has also adopted the following additional considerations:

> [W]hether the declaratory action will settle all aspects of the controversy; whether
> the declaratory action will serve a useful purpose in clarifying the legal relations at
> issue; whether the declaratory action is being sought merely for the purposes of
> procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a
> declaratory action will result in entanglement between the federal and state court
> systems. In addition, the district court might also consider the convenience of the
> parties, and the availability and relative convenience of other remedies.

*Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (quoting *American States Ins. Co. v.*

*Kearns*, 15 F.3d 142, 145 (9th Cir. 1994).

Plaintiffs argue that I should exercise jurisdiction to grant declaratory relief because an

actual case or controversy exists and "the request for declaratory relief does not involve needless

determination of state law issues nor is it blatant forum shopping. Finally, there is no other

litigation presently pending regarding this matter." ECF No. 20 at 4.

"The determination of whether a justiciable case or controversy exists for purposes of

declaratory judgement requires courts to analyze 'whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.'" *Yellowstone Ins. Exch., RRG v. Broadwater Health Ctr.*, 2025 U.S. Dist. LEXIS 22678, at *12

(D. Mont. Feb. 7, 2025) (quoting *Shell Gulf of Mex. Ins. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632,

635 (9th Cir. 2014)). It is not clear from the complaint which of the defendants are to be bound

by the requested adjudication of rights under the insurance contract. The complaint states that

the plaintiffs were insured with USAA. ECF No. 1 at ¶¶ 16, 17. But the plaintiffs consistently

refer to all of the defendants when discussing their alleged failure to receive their owed

1  payments. Plaintiffs also allege facts indicating that, despite their underinsured motorist policies

2  and their demand for settlement, the **defendants** have "delayed making an offer to settle." ECF

3  No. 1 at ¶ 22 (emphasis added). Further, the plaintiffs argue that, despite their medical payment

4  insurance policy, the **defendants** have delayed making payments to the plaintiffs to cover the

5  incurred medical expenses, *id.* at ¶ 23 (emphasis added), and that the **defendants'** delay has put

6  the plaintiffs "financially at risk" as they have been subjected to collection notices that they do

7  not have the money to pay. *Id.* at ¶ 24. Further, the plaintiffs state that "there **may** be an offset to

8  damages under the policy," but only cites USAA Casualty. *Id.* at ¶ 15. The lack of detail makes it

9  so the court cannot ascertain who is bound by what, if any, part of the insurance contract the

10  plaintiffs allege to have. Additionally, the declaratory relief claim alleges that the defendants

11  have delayed payments, not that they have denied them. ECF No. 1 at ¶¶ 22, 23. It is unclear from

12  the face of the complaint whether a delay of payment is, in fact, in violation of the insurance

13  contract. Therefore, I cannot find that there is a justiciable case or controversy between the

14  plaintiffs and any of the defendants. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. ESI Ergonomic Sols.,*

15  *LLC*, 342 F. Supp. 2d 853, 862 (D. Ariz. 2004) (finding no case or controversy when plaintiff

16  failed to allege facts indicating who was bound by the insurance contract). Plaintiffs' declaratory

17  relief claim is dismissed without prejudice and with leave to amend.

18        USAA, USAA Casualty, and Garrison next argue that the plaintiffs have failed to

19  plausibly allege a claim for exploitation of the elderly. ECF No. 17 at 5. Nevada law provides that

20  a person may bring an action for damages for injury or loss "suffered by older or vulnerable

21  person from abuse, neglect, or exploitation[.]" Nev. Rev. Stat. § 41.1395. The statute defines

22  exploitation as

23        any act taken by a person who has the trust and confident of an older person or a
         vulnerable person or any use of the power of attorney or guardianship of an older
24        person or a vulnerable person to:

25

26

(1) Obtain control, through deception, intimidation, or undue influence, over the money, assets or property of the older person or vulnerable person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of that person's money, assets, or property; or

(2) Convert money, assets, or property of the older person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of that person's money, assets or property.

§ 41.1395(b). Plaintiffs allege that Gudrun Karen

was well beyond the age of 60 years old. Nevertheless, Defendants, knowing this fact, and in full understanding that Plaintiff was not currently represented by legal counsel, wrongfully caused Plaintiff to believe there were limitations on her ability to be recompensed for her injuries. Accordingly, the USAA Defendants utilized their position of trust and confidence to, through deception, intimidation or undue influence, exert influences over monies to which Plaintiff was lawfully entitled with the intention of permanently depriving her of the ownership, use, benefit or possession of those monies.

ECF No. 1 at ¶ 36. These allegations are merely conclusory; there are no factual allegations in the complaint allowing the court to reasonably infer any relationship of trust and confidence existed between the defendants and Gudrun Karen. *See Olvera v. Shafer*, 2015 U.S. Dist. LEXIS 159363, at *13–14 (D. Nev. Nov. 24, 2015) (dismissing exploitation of the elderly claim where plaintiffs did not allege that defendant had the "trust and confidence" or "power of attorney" over plaintiff). Plaintiffs' claim of elderly exploitation is dismissed without prejudice and with leave to amend.

USAA, USAA Casualty, and Garrison next argue that the plaintiffs' Nevada Unfair Claims Practices Act (Nev. Rev. Stat. § 686A.310) claim must be dismissed. ECF No. 17 at 7. They first argue that the plaintiffs failed to exhaust their administrative remedies as required by statute. ECF No. 17 at 7. They state that

the Nevada Insurance Commissioner has exclusive jurisdiction over an insurer's alleged violations pursuant to NRS § 686A.015(1). *See Allstate v Thorpe*, 123 Nev. 565, 572 (2007) ("Under NRS 679B.120(3), the Nevada Insurance Commissioner has express authority to "[e]nforce the provisions of [the Nevada Insurance] Code," NRS Title 57 . . . ."). Thus, jurisdiction over alleged violations of the UCPA falls within the original and exclusive jurisdiction of the Nevada Insurance Commissioner. *See Herrera v. Allstate Fire & Cas. Ins. Co.*, 2015 U.S. Dist. LEXIS 55480, at *6–7 (D. Nev. Apr. 28, 2015)[.]

1  *Id.* In their opposition, the plaintiffs do not deny that they did not exhaust their administrative

2  remedies, but instead argue that Nev. Rev. Stat. § 686A.310 does not require the plaintiffs to

3  exhaust any administrative remedies. ECF No. 20 at 5–7. Specifically, they argue that *Allstate*

4  *Insurance Company v. Thorpe* does not bar this suit from being brought because "that case explicitly

5  allowed for suits against first-party insurers" and it did not mention Nev Rev. Stat. § 686A.310.

6  ECF No. 20 at 6. Plaintiffs also argue that the statute's language stating that "*in addition to* any

7  rights or remedies available to the Commissioner, an insurer is liable to its insured for any

8  damages sustained by the insured as a result of the commission of any act set forth in subsection

9  1 as an unfair practice" indicates a private right of action for the insured which does not require

10  the exhaustion of administrative remedies. *Id.* at 6–7 (emphasis in original). In their reply, USAA,

11  USAA Casualty, and Garrison do not dispute that the statute creates a private right of action,

12  but state that this does not divest the commissioner of the Nevada Department of Insurance of

13  exclusive jurisdiction to regulate trade practices in the business of insurance in Nevada, and

14  therefore the plaintiffs are still required to exhaust administrative remedies. ECF No. 23 at 7

15  (citing Nev. Rev. Stat. § 686A.015).

16        Although I am inclined to agree that the statute's private right of action means that

17  parties need not exhaust administrative remedies with the Nevada Department of Insurance,[3] I

18  do not address exhaustion because the plaintiffs' Nevada Unfair Claims Practices Act claim is

19  too vague for the court to engage in a plausible analysis; the complaint does not allege that the

20  defendants violated any specific provision of the Act. *See* ECF No. 1 at 6. Because the plaintiffs

21  fail to cite to the specific provision of the Nevada Unfair Claims Practices Act that the

22  defendants allegedly violated, they have failed to state a claim. *See Brewer v. Leprino Foods Co.*, 2019

23  U.S. Dist. LEXIS 41869, at *10–11 (E.D. Cal. Mar. 13, 2019) (finding plaintiff failed to state a claim

24  where she failed to cite to a specific provision of California's Fair Employment and Housing Act

25  —————————————————

26  [3] *See Iovino v. Am. Trust Fin. Servs. Inc.*, 2025 U.S. Dist. LEXIS 47402, at *25 (D. Nev. Mar. 13, 2025) ("Nothing in § 686A.310(2) suggests that an insured must first exhaust administrative remedies with the Commissioner before suing an insurer for violations of § 686A.310").

1    and instead just cited to the Act as a whole). Therefore, their Nevada Unfair Claims Practices

2    Act cause of action is dismissed without prejudice and with leave to amend.

3         USAA, USAA Casualty, and Garrison next move to dismiss the plaintiffs' cause of action

4    for bad faith because the plaintiffs have not plausibly alleged facts to support a viable claim for

5    bad faith. ECF No. 17 at 9. I agree. "Nevada law imposes a covenant of good faith and fair dealing

6    on all insurers that, if violated, can give rise to a bad-faith tort claim." *Ariz. Civ. Constructors v.*

7    *Colony Ins. Co.*, 481 F. Supp. 3d 1141, 1151 (D. Nev. 2020) (citing *U.S. Fid. & Guar. Co. v. Peterson*, 540

8    P.2d 1070, 1071 (Nev. 1975)). To successfully plead a claim of bad faith, a plaintiff must allege (1)

9    the existence of an insurer-insured relationship, (2) that the insurer breached its duty by

10   refusing to defend or indemnify its insured for a loss covered by a policy, and (3) the insurer has

11   an "actual or implied awareness of the absence of a reasonable basis for denying the benefits of

12   the policy." *Id.* (quoting *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354–55 (Nev.

13   1986)). Plaintiffs plead no facts plausibly allowing the court to infer that USAA, USAA Casualty,

14   or Garrison had actual or implied awareness that there was no reasonable basis for denying the

15   benefits of the policy. Plaintiffs merely state that "the actions taken by [USAA, USAA Casualty,

16   and Garrison] were not actions taken in good faith, were unreasonable, and were undertaken

17   with knowledge of the lack of a reasonable basis for its behavior." ECF No. 1 at ¶ 45. These are

18   conclusory legal allegations that cannot survive a motion to dismiss. *See Adams v. Johnson*, 355 F.3d

19   1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law. . . are insufficient to defeat a motion

20   to dismiss . . . ."). Plaintiffs' bad faith claim is dismissed without prejudice and with leave to

21   amend.

22        Lastly, USAA, USAA Casualty, and Garrison ask that the court strike the plaintiffs'

23   requests for punitive damages and attorneys' fees and costs. ECF No. 17 at 11. Turning first to the

24   request for punitive damages, USAA, USAA Casualty, and Garrison argue that the complaint

25   does not plead facts sufficient to permit such relief. *Id.* Nev. Rev. Stat. § 42.005 provides that in

26   actions arising for a breach of a duty not arising from contract, "where it is proven by clear and

1  convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or

2  implied, the plaintiff, in addition to the compensatory damages, may recover damages for the

3  sake of example and by way of punishing the defendant." Looking at the facts in the light most

4  favorable to the plaintiffs, at best the complaint alleges a dispute about the plaintiffs'

5  underinsured motorist insurance and medical payment claims. Plaintiffs' complaint fails to

6  allege facts demonstrating that USAA, USAA Casualty, or Garrison acted with oppression,

7  fraud, or express or implied malice in this dispute. Therefore, the complaint does not satisfy the

8  requirements of § 42.005 and the request is dismissed without prejudice.

9       Last, I deny the defendants' request to dismiss the plaintiffs' prayer for attorneys' fees as

10 premature. *Nurses v. United States*, 226 F.3d 996, 1005 (9th Cir. 2000) (reversing order denying fees

11 as premature because "this litigation is in its early stages").

12      USAA, USAA Casualty, and Garrison's partial motion to dismiss is granted. Plaintiffs'

13 claim for declaratory relief (claim one), exploitation of the elderly claim (claim three), unfair

14 claims practices act claim (claim four), and bad faith claim (claim five) are dismissed without

15 prejudice and with leave to amend.[4] Additionally, the plaintiffs' request for punitive damages is

16 dismissed without prejudice.

17      **B.  Auto Injury Solution/CCC's motion to dismiss is granted.**

18      AIS/CCC moves to dismiss plaintiffs' claims against it for lack of personal jurisdiction

19 and for failure to state a claim upon which relief can be granted. Mot., ECF No. 24.

20          *1.  The court does not have personal jurisdiction over AIS/CCC.*

21      It is well established that the Fourteenth Amendment's Due Process Clause limits the

22 power of a state's courts to exercise jurisdiction over defendants who do not consent to

23 jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). There are two

24 kinds of personal jurisdiction that a state's courts may exercise over an out-of-state defendant.

25

---

26 [4] With regard to the breach of contract claim, defendants acknowledge that this is a "viable cause of action" and therefore do not argue for its dismissal. ECF No. 17 at 12.

*Id.* at 924. A court may assert general jurisdiction over a defendant "to hear any and all claims against it" only "when the corporation's affiliations with the State in which the suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citing *Goodyear Dunlop Tires*, 564 U.S. at 919). A court may assert specific jurisdiction over a defendant when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum . . . ." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the court resolves the motion without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." *Id.* (quoting *Sher*, 911 F.2d at 1361). "Uncontroverted allegations in the plaintiff's complaint must be taken as true." *Id.* (citing *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). A court has personal jurisdiction over a defendant if the court has either general jurisdiction or specific jurisdiction over it; I analyze each in turn.

"With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG*, 571 U.S. 117 at 137 (internal quotations and citation omitted). It is undisputed that AIS/CCC is not a resident of Nevada. *See* ECF No. 1 at ¶ 5 (stating that AIS/CCC is a "foreign corporation"). AIS/CCC is incorporated in Delaware and has its principal place of business in Illinois. ECF No. 24 at 6. "General jurisdiction over a nonresident corporation 'is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state.'" *Lindblad v. Linde AG*, 2024 U.S. Dist. LEXIS 37521, at *4 (N.D. Cal. Mar. 4. 2024) (quoting

1   *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2006)). AIS/CCC argues that this court

2   cannot exercise general jurisdiction over it because it does not have substantial or continuous

3   and systematic contacts to make it "at home" in Nevada. ECF No. 24 at 6. It argues that

> CCC is a Delaware corporation that contracts with USAA, a Texas corporation, to
> provide mail processing services to USAA and its subsidiaries, including Garrison,
> which is also a Texas corporation. CCC's medical mail processing services for
> USAA are performed in Daphne, Alabama, including receiving, scanning, indexing,
> uploading, and processing USAA's medical mail. CCC is not "found" or physically
> located in Nevada as it does not own any Nevada property, nor does it operate any
> facilities in Nevada. Contrary to Plaintiffs' Complaint, AIS was not an insurance
> company and, as such, is not licensed or required to be licensed by the State of
> Nevada. AIS did not advertise in Nevada and has never sold any goods or services
> in Nevada.

10   *Id.* at 6–7 (citing to Senftle Decl., Def.'s Ex. A, ECF No. 24-1) (internal citations omitted). In

11   response, the plaintiffs argue that AIS/CCC operates as a "captive entity for and on behalf of the

12   USAA Defendants" and that "they are, for all intents and purposes, the same." ECF No. 27 at 4.

13   To support their argument, the plaintiffs state that USAA requires claimants to submit all

14   required paperwork to AIS/CCC. *Id.* at 4–5. They also argue that

> [USAA, USAA-Casualty, and Garrison] repeatedly and explicitly hold out
> AIS/CCC as their own "Medical Mail Department" to Nevada residents and policy
> holders. <u>Plaintiff's</u> [sic] <u>Exhibit 1</u> constitutes one-hundred and thirty (130) pages
> authored by [USAA, USAA-Casualty, and Garrison] in the course of the parties
> pre-litigation correspondence wherein—despite being mailed from a USAA
> address or signed on behalf of one of the [Defendants]—all return correspondence
> is directed specifically to AIS / CCC. Any appeal of USAA's decision on the amount
> or value of benefits rendered or reimbursed is directed specifically to AIS / CCC.
> [USAA, USAA-Casualty, and Garrison] systematically hold out AIS / CCC to
> Nevada insureds. Paperwork by the hundreds of reams flows on the [USAA,
> USAA-Casualty, and Garrison's] behalf from Nevada to AIS / CCC's PO Box in
> Daphne, Alabama. In the correspondence included within <u>Plaintiff's Exhibit 1</u>, the
> [USAA, USAA-Casualty, and Garrison] also identify themselves with the same
> mailing address as that provided for AIS / CCC. The defendants deliberately blur
> all lines between their respective entities because they function as one in purpose.

24   *Id.* at 5 (citing pre-litigation correspondence, Pls.' Ex 1, ECF No. 27-1) (underline in original). In

25   reply, AIS/CCC argues that all of the documents the plaintiffs cite make clear that "all claim

26   decisions, benefit determinations, and payments were all made by [USAA, USAA-Casualty, and

1   Garrison]." ECF No. 32 at 3. "Nothing in Plaintiffs' submitted documents evidences that

2   [AIS/CCC] even had any contact with Plaintiffs. Rather, [AIS/CCC] simply processed the mail

3   that Plaintiffs and/or their medical provides [sic] sent to USAA's Alabama mailbox." *Id.*

4          I find that the plaintiffs have not met their burden demonstrating that AIS/CCC

5   maintains systematic and continuous contacts with the state of Nevada so as to exercise general

6   jurisdiction over it. First, AIS/CCC disputes the plaintiffs' allegation that it "is actually engaged

7   in the business of selling insurance." ECF No. 24 at 7, 9 (citing ECF No. 24-1 at ¶ 5). As the

8   plaintiffs do not respond to this dispute in their response to the motion to dismiss, there are not

9   sufficient jurisdictional facts for me to find that AIS/CCC does, in fact, sell insurance. *See*

10  *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) ("we may not assume the

11  truth of allegations in a pleading which are contradicted by affidavit"). The record demonstrates

12  that AIS/CCC provides medical bill processing services to USAA, Garrison, and USAA-

13  Casualty. ECF No. 24-1 at ¶¶ 3,4. Additionally, AIS/CCC does not advertise, nor does it sell

14  goods or services in Nevada. *Id.* at ¶ 9. And AIS/CCC does not own any property in Nevada, nor

15  does it operate any facilities in Nevada. *Id.* at ¶ 8. A court within this circuit in *Garner v. USAA*

16  *General Indemnity Co.*, found that it could not exercise general personal jurisdiction over Auto

17  Injury Solutions when Auto Injury Solutions did not advertise, sell goods or services, own any

18  property, or operate any facilities in the state in question. 2019 U.S. Dist LEXIS 122628, at *5–6

19  (D. Mont. July 23, 2019). As the facts in *Garner* are analogous to the ones here, I find this to be

20  persuasive and find the record demonstrates that AIS/CCC has insufficient contacts with

21  Nevada to support a finding of general jurisdiction.

22         In the absence of general jurisdiction, the plaintiffs must demonstrate that the court can

23  exercise specific jurisdiction over AIS/CCC. "Determining whether specific jurisdiction exists

24  over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute

25  permits service of process, and whether the assertion of personal jurisdiction would violate due

26  process." *Edwards v. Juan Martinez, Inc.*, 2020 U.S. Dist LEXIS 174114, at *8 (D. Nev. Sept. 22, 2020)

1  (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177, 1180 (9th Cir. 2004)).

2  "Because Nevada's long-arm statute, NRS § 14.065, reaches the 'outer limits of federal

3  constitutional due process,'" the court need only analyze whether exercising specific jurisdiction

4  over AIS/CCC comports with due process. *Id.* (citing *Certain-Teed Prods. Corp. v. Second Jud. Dist. Ct.*,

5  479 P.2d 781, 784 (Nev. 1971)).

6      The Ninth Circuit has established a three-prong test for analyzing claims of specific

7  personal jurisdiction:

8      (1) The non-resident defendant must purposefully direct his activities or
9          consummate some transaction with the forum or resident thereof; or perform
           some act by which he purposefully avails himself of the privilege of conducting
10         activities in the forum, thereby invoking the benefits and protections of its
           laws;

11
        (2) the claim must be one which arises out of or relates to the defendant's forum-
12          related activities; and

13
        (3) the exercise of jurisdiction must comport with fair play and substantial justice,
14          i.e. it must be reasonable.

15  *Schwarzenegger*, 374 F.3d at 802 (quotation omitted). "The plaintiff bears the burden of satisfying

16  the first two prongs of the test." *Id.* If he succeeds, then the defendant must "present a

17  compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotation

18  omitted).

19      Plaintiffs argue that AIS/CCC has purposefully availed itself of the privilege of

20  conducting activities in Nevada because USAA directs all Nevada correspondence through

21  AIS/CCC, and because AIS/CCC "shares unity in purpose with [USAA, USAA-Casualty, and

22  Garrison] as to the receipt and evaluation of medical correspondence, and then the generation of

23  medical opinion upon which USAA bases its claims evaluation." ECF No. 27 at 6. In its reply,

24  AIS/CCC argues that the "[p]laintiffs neither allege nor submit any evidence that [Auto Injury

25  Solutions] conducted activities in Nevada or consummated a transaction in Nevada. Plaintiffs'

26  own document submissions . . . confirm that all adjusting decisions are made by USAA." ECF

No. 32 at 5 (citing ECF No. 27-1 at 23). Additionally, it states that the plaintiffs do not allege that they ever had any direct contact with AIS/CCC. *Id.* AIS/CCC describes the process the plaintiffs engaged in: "Plaintiffs sent medical mail to their insurer at USAA's Alabama mailbox (Auto Injury Solutions; Attn: USAA Medical Mail Dept.). Once Plaintiffs sent the bills to USAA, all of [Auto Injury Solution]'s mail processing activities for USAA (labeling, indexing, processing and uploading USAA's mail to the software) were performed in Alabama." *Id.* (citing ECF No. 24-1 at ¶ 4). This, it surmises, is not sufficient to demonstrate purposeful availment. *Id.*

Plaintiffs do not meet their burden demonstrating that AIS/CCC purposefully availed itself of the privilege of doing business in Nevada such that it would be fair to exercise specific jurisdiction over it in this case. Plaintiffs' claims arise out of their insurance contract with USAA and USAA's alleged failure to honor that contract. AIS/CCC is not a party to the contract at issue. Plaintiffs' argument that AIS/CCC purposefully availed itself of Nevada because it performs medical bill processing services for USAA is insufficient to demonstrate specific jurisdiction. The Ninth Circuit has explained that "a showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. In *Fulbright & Jaworski v. Eighth Judicial District Court*, the Supreme Court of Nevada held that it did not have personal jurisdiction over an out-of-state attorney representing a Nevada client because the out-of-state attorney's communications with the Nevada client were incidental to an attorney-client relationship, and the client's residence was "mere fortuity." 342 P.3d 997, 1003 (Nev. 2015). At the crux of the Supreme Court of Nevada's decision was the fact that there was no evidence that the attorney reached out to the client's home forum to solicit the client's business. *Id.* at 1004. That case, although about an attorney and not a medical bill processor, is analogous to this case. Here, like the defendant in *Fulbright*, there is no evidence that Auto Injury Solutions reached out to Nevada to solicit any business from Nevada residents. Just as the communications between the out-of-state attorney and the Nevada

client were incidental to the attorney-client relationship in *Fulbright*, any communications with Nevada residents by Auto Injury Solutions was incidental to its role as a medical bill processor, and the fact that the plaintiffs reside in Nevada was nothing more than "mere fortuity." AIS/CCC's actions in processing medical bills from Nevada residents does not constitute purposeful availment of Nevada's jurisdiction and it would not be proper to exercise specific jurisdiction over it on that basis. As the plaintiffs have failed to demonstrate that this court has general or specific personal jurisdiction over AIS/CCC, AIS/CCC is dismissed from this lawsuit for lack of personal jurisdiction.[5] AIS/CCC's motion to dismiss is granted without prejudice and with leave to amend.

## IV.    Conclusion

IT IS HEREBY ORDERED that USAA, USAA Casualty, and Garrison's motion to dismiss **[ECF No. 17] is GRANTED**. Plaintiffs' claims are dismissed without prejudice and with leave to amend.

IT IS FURTHER ORDERED that Auto Injury Solution/CCC's motion to dismiss **[ECF No. 24] is GRANTED** for lack of personal jurisdiction. Plaintiffs' claims are dismissed without prejudice and with leave to amend.

Should plaintiffs choose to amend, the new complaint should be labelled "First Amended Complaint" and must be submitted no later than August 5, 2025.

Dated: July 22, 2025

_____
Cristina D. Silva
United States District Judge

---

[5] Because I dismiss AIS/CCC for lack of personal jurisdiction, I do not address its argument that plaintiffs' claims against it should be dismissed for failure to state a claim.