UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Allison Karen, et al., | Case No. 2:24-cv-02089-CDS-DJA |
| Plaintiffs | **Order Granting in Part and Denying in Part the Defendants' Motion to Partially Dismiss the First Amended Complaint** |
| v. | |
| United Services Automobile Association, et al., | [ECF No. 56] |
| Defendants | |

This is an auto insurance dispute. On July 22, 2025, I granted defendants United States Automobile Association (USAA), USAA Casualty Insurance Company (USAA Casualty), and Garrison Property and Casualty Insurance Company's (Garrison) (collectively, "the defendants") partial motion to dismiss the original complaint.[1] *See* Order, ECF No. 52. I also granted defendant Auto Injury Solutions, Inc.'s motion to dismiss for lack of personal jurisdiction. *Id.* Both dismissal motions were granted without prejudice and with leave to amend. *Id.* On August 5, 2025, plaintiffs Allison Karen and Gudrun Karen (collectively, "the plaintiffs" or "the Karens") filed a first amended complaint (FAC).[2] ECF No. 53. Therein, the plaintiffs reallege the same claims: (1) declaratory relief, (2) breach of contract, (3) bad faith, (4) two claims for exploitation of the elderly, and (5) violations of Nevada's prohibition on unfair claims practices. *See id.*

On August 29, 2025, the defendants filed a motion to dismiss parts of the FAC. ECF No. 56. The motion is now fully briefed. Opp'n, ECF No. 57; Reply, ECF No. 58. For the reasons herein, the defendants' motion is granted in part and denied in part.

---

[1] *See* Mots. to dismiss, ECF Nos. 17, 24.

[2] The plaintiffs' counsel is reminded that all filings must comply with this District's Local Rules, including Rule IA 10-1(b) that requires, with limited exception, all "[d]ocuments filed electronically [to] be filed in a **searchable** Portable Document Format (PDF)." LR IA 10-1(b). The FAC fails to comply with this requirement. Counsel is cautioned that future filings that fail to comply with this rule will be stricken.

## I.   Background[3]

On or about April 29, 2023, the plaintiffs allege that they were involved in a motor vehicle accident "as a result of the negligence of an under-insured motorist." ECF No. 53 at 5, ¶ 22. At the time of the accident, plaintiff Allison Karen[4] was driving her vehicle with plaintiff Gudrun Karen as a passenger. *Id.* The plaintiffs were insured with USAA, USAA-CIC, and/or Garrison, under policy number 02002 35 08R 7101 3 ("the Policy"), and as relevant here, with uninsured / underinsured motorist (UIM) bodily injury coverage with policy limits of "$1,000,000.00 per person, $1,000,000.00 per accident." *Id.* at ¶¶ 20–21. The plaintiffs were also insured with USAA for a "stackable medical payment policy limit of $100,000.00 per person, per vehicle." *Id.* at ¶ 21.

The plaintiffs informed USAA of the accident on May 2, 2023. *Id.* at 5–6, ¶¶ 25–27. Upon information and belief, Jacob Franklin, a self-identified "medical adjuster with USAA," acknowledged receipt of the claim and invited direct, digital written communication with a relative of the Karens, Lars Elmqvist, "to expedite the medical claims process" the following day. *Id.* at 6, ¶ 27. The complaint alleges that Franklin and others from USAA, communicated with Elmqvist about the policy and coverage several times between May 3, 2023, and May 11, 2023. *See id.* at 6–7, ¶¶ 28–35. As part of those communication, USAA advised the plaintiffs that they needed to submit documentation like itemized bills, records for any medical payment coverage, and personal identifying information. *See id.* As alleged, Elmqvist twice attempted to provide personal identifying information for Gudrun to Franklin but was unsuccessful, so Elmqvist invited Franklin to call him so he could provide that information. *Id.* at ¶ 33.

On July 5, 2023, the plaintiffs received a written correspondence from USAA regarding Gudrun's social security number (SSN). *Id.* at 7, ¶ 36. When Elmqvist called USAA to provide that information over the phone, he was advised USAA could not accept that information

---

[3] Citation to the FAC complaint is to provide background and appropriate analysis under Fed. R. Civ. P. 12(b)(6) standard. It does not serve as a finding of fact.

[4] While not alleged, Allison Karen is also known as Allison Swenson.

telephonically. *Id.* In response to the letter, Elmqvist called to provide the requested information and provided Gudrun's SSN via the USAA app. *Id.* at ¶¶ 36–37. Between July 5 and July 6, 2023, an unidentified USAA agent responded asking who was asking for the SSN, as they already had that information, and further represented that they would "advise the Medical Payment adjuster . . . that the social security number [was] updated." *Id.* at ¶¶ 38–39. Between July 6, 2023, and September 25, 2023, the plaintiffs (through Elmqvist) communicated, and sometimes engaged disputes, with USAA about the claim and the request for medical payment coverage several times. *See id.* at ¶¶ 40–49.

On November 14, 2023, the plaintiffs' counsel advised USAA of his representation of the plaintiffs and requested verification of all applicable insurances and corresponding coverage limits. *Id.* at 9, ¶ 50. Thereafter, counsel and USAA communicated several times about the claim. *Id.* at 9–10, ¶¶ 51–54. On December 12, 2023, USAA issued payment in the amount of $2,003.54 for Gudrun and her counsel under the medical payments provision of her coverage, even though she had provided medical bills in excess of $28,000.00. *Id.* at 10, ¶ 55.

On January 2, 2024, while covered by the same policy detailed above, the plaintiffs were involved in a second accident. *Id.* at ¶¶ 57, 59. As alleged, this accident was also the "result of . . . negligence [by] an under-insured motorist." *Id.* The plaintiffs suffered significant injury and incurred substantial expenses for medical care and treatment. *Id.* at 10–11, ¶ 58. On January 26, 2024, counsel for the plaintiffs sent USAA a written communication detailing Allison's medical treatment and expenses, both past and future. *Id.* at 11, ¶ 61.

On March 27, 2024, counsel sent another written communication to USAA because of the defendant's alleged failure to respond to the January communication. *Id.* at ¶ 64. Therein, counsel demanded tender of the plaintiffs' benefits within 15 days. *Id.*  The demand explicitly stated that no extensions would be provided. *Id.* No response was received withing 15 days. *Id.* at ¶ 65.

On April 17, 2024, USAA issued payment to Allison and her counsel in the amount of $25,801.80, despite having submitted the required documentation. *Id.* at ¶ 66. On May 3, 2024, USAA issued another payment to Allison and her counsel, under the same coverage provision, in the amount of $88.99. *Id.* at ¶ 70.

On May 8, 2024, the plaintiffs' counsel sent written correspondence to USAA demanding reservation and tender of all application UIM benefits, "including and up to $2,000,000.00" for the plaintiffs' two accidents. *Id.* at 12, ¶ 72. Therein, counsel detailed the plaintiffs' injuries and medical treatments—both past and future—as well as other information. *Id.* That letter included a demand of payment under all applicable UIM policy limits within 30 days. *Id.* at ¶ 73. USAA responded to the plaintiffs' May 8th letter, requesting an extension to July 1, 2024. *Id.* at ¶ 74. In June 2024, the plaintiffs' counsel sent additional information detailing his clients' injuries and medical treatments. *See id.* at 13, ¶¶ 75–76. The July 1, 2024 deadline expired without USSA tendering the requested policy limits. *Id.* at ¶ 77.

On July 10, 2024, USAA issued Allison and her counsel $10,399.49, despite having submitted the required documentation in excess of $125,000.00, with future treatment still pending. *Id.* at ¶ 79. On July 12, 2024, the plaintiffs' counsel sent additional correspondence to USAA, detailing that both plaintiffs were diagnosed with traumatic brain injuries and that Allison needed back surgery. *Id.* at ¶ 81. That letter also advised USAA that a complaint could be filed on or before July 30, 2024. *Id.*

On November 18, 2024, the plaintiffs' counsel sent further correspondence to USAA detailing USAA's failure to follow up on telephonic discussions of Alternative Dispute Resolution and the defendants' offer to settle the claims. *See id.* at ¶ 81. Despite the applicable insurance policy, either the plaintiffs' claims and demands have been unreasonably delayed, or USAA has failed to make a reasonable offer to settle—both of which have placed the plaintiffs at financial risk, required them to hire counsel, and prompted them to bring this action. *See id.* at 17–18.

## II.      Legal standard

The parties are familiar with the requirements under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), so I do not restate them here. However, they are applied herein accordingly.

## III.      Discussion

The defendants move to dismiss: (1) all of the plaintiffs' claims asserted jointly against USAA, USAA CIC, Garrison and "Doe Insurance Company" (collectively, "the Companies"); (2) the claim for declaratory relief; (3) the claim alleging contractual or tortious bad faith; (4) the exploitation of the elderly claims; and (5) the claim brough under Nevada's Unfair Claims Practices Act. *See* ECF No. 56. The defendants also seek to strike the plaintiffs' prayer for punitive damages. I address each argument in turn.

### A. The defendants' motion to dismiss all of the plaintiffs' claims asserted jointly against USAA, USAA CIC, Garrison and "Doe Insurance Company" is granted in part and denied in part.

The defendants contend that all claims asserted jointly against USAA, USAA CIC, Garrison, and "Doe Insurance Company" should be dismissed because, as shown by the Policy's declarations page,[5] it was issued by Garrison, not USAA or USAA-CIC. ECF No. 56 at 4–5. The defendants assert that the plaintiffs concede that the three named companies are, indeed, separate entities, and "as a matter of law, parent companies are not party to the subsidiary's contract." *Id.* at 5.

In opposition, the plaintiffs argue they, as well as their counsel, received "correspondence from or was instructed to correspond with all (3) entities in the process of attempting to negotiate" the plaintiffs' claims. ECF No. 57 at 5–6. The plaintiffs also note that the policy contains ambiguous identification of the insuring entity, noting the declarations page identifies

---

[5] *See* Policy, Defs.' Ex. 1, ECF No. 56-1.

"Garrison Property and Casualty Insurance Company" on one page, but later in the same packet identifies USAA as the insurer. *Compare* ECF No. 56-1 at 5, *with id.* at 6.

It is well established that a party who lacks a contractual relationship with an insurer does not have standing to bring a claim of bad faith. *Gunny v. Allstate Ins. Co.*, 830 P.2d 1335, 1335–36 (1992). Although the defendants contend the face of the Policy makes clear it was issued by Garrison, thus there is no privity between the plaintiffs and the Companies, I disagree that it is that clear. A plain review of the four corners of the Policy reveals that USAA's logo is printed throughout the policy. *See* Policy, Defs.' Ex. 1, ECF No. 56-1. Further, the Policy lists "Garrison Property and Casualty Insurance Company," *see id.* at 5–6, but states in other places that policy holders should visit usaa.com to manage their Policy online. *See id.* at 3. Moreover, the allegations include communications with a USAA (sometimes on behalf of Garrison) employees, and instructions to send claim related information to "USAA Medical Mail Department" or "USAA Claims Department." *See* ECF No. 53. USAA-CIC is a different story because they are not referenced, identified, or otherwise noted in the Policy or the substantive allegations.

Generally, dismissal based on lack of privity would be inappropriate because it would require the court to look beyond the complaint to determine the corporate structure of the Companies. However, applying the plausibility standard, the complaint sets forth sufficient allegations for USAA and Garrison to potentially be held liable for the stated claims. *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (court generally cannot look beyond the pleadings to resolve a motion to dismiss for failure to state a claim). The same cannot be true as to USAA-CIC as they are not referenced in any of the factual allegations. So the defendants' motion is denied as to USAA and Garrison but granted as to USAA-CIC. Dismissal is granted without prejudice and with leave to amend.

**B.  The defendants' motion to dismiss the tortious bad faith claims is denied.**

The defendants contend that the FAC fails to set forth a plausible contractual or tortious bad faith claim. *See* ECF No. 56 at 9–13. In response, the plaintiffs clarify that their third claim is

6

one for tortious, not contractual, breach of the implied covenant of good faith and fair dealing.[6] ECF No. 57 at 9. They contend that the FAC provides abundant allegations supporting the various ways the defendants contravened the "spirit of the parties' contract." *Id.* They acknowledge that the defendants issued various payments towards their medical benefits, the complaint alleges that they failed to do so to the full extent owed, and that the defendants failed to meet certain demands, thus demonstrating bad faith. *Id.* They also argue that the FAC's timeline demonstrates that the defendants' investigation and evaluation of the claim contravenes Nevada's statutory timelines. *Id.* In reply, the defendants assert that the plaintiffs' claim is nothing more than a dispute over valuation of the claim, which is not a proper bad faith claim. *See* ECF No. 58.

Nevada has long held that insurance contracts have an implied covenant of good faith and fair dealing between both parties. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993). An insurer fails to act in good faith when it refuses "without proper cause" to compensate the insured for a loss covered by the policy. *Id.* A violation of this implied covenant gives rise to a bad faith tort claim when a special relationship exists between the parties, such as insured and insurer. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324–26 (Nev. 2009). Generally, to prevail on a bad faith claim, the plaintiff must show the insurer unreasonably denied or delayed payment of a valid claim and did so with actual or implied awareness that there was no reasonable basis to deny the claim. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). However, "an insurer is not liable for bad faith for being incorrect about policy coverage so long as the insurer had a reasonable basis to take the position that it did." *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994).

The FAC sets forth allegations calling into question the lengthy time between the plaintiffs' claims and receiving payment pursuant to the Medical Payment provision of the Policy, and further alleges that the defendants did not respond to correspondence related to the

---

[6] To that end, the defendants' motion to dismiss a contractual bad faith claim is granted.

claim, to include correspondence that provided detailed medical records and billing information to support their demand. These allegations are sufficient to allege a tortious bad faith claim. *See Allstate Ins. Co.*, 212 P.3d at 324 (bad faith also occurs when an insurer lacks a reasonable basis for denying or disputing coverage, and the insurer knew or was impliedly aware that it lacked reasonable basis for disputing or denying coverage); *Skach v. AAA N. Cal.*, 2013 U.S. Dist. LEXIS 32380, at *8 (D. Nev. Mar. 6, 2013) (bad faith is an actual or implied awareness of the absence of a reasonable basis for denying benefits under the policy) (quoting *Allstate Ins. Co.*, 212 P.3d at 324)). Accordingly, based on the allegations in the complaint, the defendants' motion to dismiss the bad faith claim is denied.

### C. The defendants' motion to dismiss the plaintiffs' claim pursuant to the Nevada Unfair Claims Practices Act (NUCPA) is denied.

The defendants' move to dismiss the plaintiffs' Nevada Unfair Claims Practices Act claim, arguing it merely parrots the statutory language and fails to identify specific portions of the statute that were allegedly violated. ECF No. 56 at 16–18. In reply, the defendants also alleged that the plaintiffs merely incorporate all allegations into this claim without identifying how they violated NUCPA. ECF No. 58. at 9–10. The plaintiffs oppose the motion. ECF No. 57 at 11–12.

Unlike the original complaint, the NUCPA claim in the FAC does identify which specific subsections (a-c-f, k, n) were allegedly violated by defendants' actions. *See* ECF No. 53 at 20–21, nn.37–45; *id.* at 24–25. Accepting the allegations as true, the FAC sufficiently and plausibly states a claim against the defendants for a violation of NUCPA, so their motion to dismiss on this ground is denied.

8

**D. The defendants' motion to dismiss the plaintiffs' exploitation of an elderly person claims are dismissed without prejudice.**

The defendants also move to dismiss the plaintiffs' claims alleging a violation of NRS 41.1395, arguing that the FAC, like the original complaint, fails to allege any sort of relationship of trust or confidence between the defendants and the plaintiffs. ECF No. 56. at 14. They further argue that, even assuming arguendo the "requisite relationship" between the parties, the FAC fails to "plausibly allege that Defendants 'obtained control' over or converted the 'money, assets, or property.'" *Id.* Last, the defendants argue that if the plaintiffs are alleging that they engaged in some sort of "deception" with a fraudulent intent, then the FAC fails to meet the heightened pleading requirements under Fed. R. Civ. P. 9(b). *Id.* at 15.

In opposition, the plaintiffs argue that insurers owe their insureds a fiduciary-like duty. ECF No. 57 at 10 (citing *Ainsworth v. Combined Ins. Co.*, 763 P.2d 673, 676 (Nev. 1988)). They therefore argue that "fiduciary-like duty" creates a "relationship of special confidence," and that the defendants maintained control over the plaintiffs' benefits without just reason, so they have plausibly pleaded exploitation of the elderly claims. *Id.*

NRS 41.1395 establishes that "if an older person or vulnerable person suffers injury, death or loss of money or property caused by abuse, neglect or exploitation, the person who caused the injury, death or loss is liable to the older person or vulnerable person." NRS 41.1395. To recover special damages, a plaintiff must plead that: "(1) [the defendants were] someone who had [the plaintiff's] trust or confidence, power of attorney, or guardianship over [the plaintiff]; (2) [the defendants] acted; (3) [the defendants] obtained control through deception, intimidation, or undue influence over [the plaintiffs] and [their] money or assets, or [the defendants] converted [the plaintiffs'] money or assets; (4) with intent to permanently deprive [the plaintiffs] of [their] assets." *Carroll v. R.J. Nelson, Inc.*, 137 Nev. 894 (2021).

The plaintiffs' claim under NRS 41.1395 is flawed. First, Gudrun Karen's claim fails because he was not insured under the Policy, so there is no "fiduciary like" relationship between him and the defendants. Second, and contrary to the plaintiffs' argument, the allegations here are precisely like those in *DeRuise v. Progressive Cas. Ins. Co.* 2011 WL 3651297 (D. Nev. Aug. 17, 2011). In that case, the plaintiffs alleged that the defendant violated the statute by intentionally delaying and withholding policy benefits. *Id.* at *2. In dismissing the claim without leave to amend, the court held that the allegations were "simply not in accordance with the statutory definition of exploitation contained in [NRS] 41.1395." *Id.* That is sound reasoning. Third, the statute defines "exploitation" as "any act taken by a person who has the trust and confidence of an older person or a vulnerable person or any use of the power of attorney or guardianship" to obtain control over money, assets, or property **through deception, intimidation or undue influence**" or to "convert money, assets or property" with "the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession" of their property. NRS 41.1394(4)(b)(1) (emphasis added). While the FAC is abundant with allegations, none of them plausibly allege how the defendants' used deception, intimidation, or undue influence over the plaintiffs. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."). Accordingly, the defendants' motion to dismiss the plaintiffs' claims brought under NRS 41.1395 is granted.[7] Although it seems unlikely that the plaintiffs will be able to cure the deficiencies identified above, because futility is not clear, I dismiss without prejudice and with leave to amend.

---

[7] Defendants also argue that, to the extent the plaintiffs are alleging they engaged in some sort of "'deception' and acted with fraudulent intent," then the FAC fails to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). Plaintiffs failed to respond to this argument, so I also grant the motion to dismiss these claims without prejudice pursuant to Local Rule 7-2(d), which states "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion."

**E. Plaintiffs' claim for declaratory relief is dismissed without prejudice.**

The defendants argue that plaintiffs' claim for declaratory relief is insufficiently pleaded, serves no purposes, and is inappropriately retrospective. *See* ECF No. 56 at 5–9. In opposition, the plaintiffs argue that the defendants' inappropriately bootstrap their argument for dismissal of this claim to their arguments regarding a "lack of privity" between the defendants, and that this claim is both adequately pled and appropriate because they seek to "find and declare available coverage(s) available to each Plaintiff for their respective claims" so the claim is "abundantly clear how it applies to all three Defendants." ECF No. 57 at 7–8. In reply, the defendants argue that the plaintiffs' claim is putting the proverbial cart before the horse "by asking the Court to 'declare' coverage and payment obligations for all three Defendants, but only by first assuming that each is a party to the Policy." ECF No. 58 at 5.

The Declaratory Judgment Act (DJA) states, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In Nevada, declaratory relief between an insured and his insurer may be granted prior to a final tort judgment. *El Capitan Club v. Fireman's Fund Ins. Co.*, 506 P.2d 426, 429 (Nev. 1973). However, claims for declaratory relief frequently accompany claims for breach of insurance contracts and are used to determine whether coverage exists in a given insurance policy. *Id.* at 428. So "the declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action," but instead should be included when it would be beneficial to make an early determination of coverage under the policy. *Id.* (quotations omitted).

The parties do not dispute the existence of a valid insurance contract. Rather, the dispute is over which company is allegedly responsible under that contract for alleged breach and related claims. There is no reason why the coverage disputes cannot be resolved in the main action to include clearly determining which defendant is a party to the policy. As such, the

11

plaintiffs' DJA claim does not serve a useful purpose in clarifying the legal relations at issue, so they are dismissed without prejudice.

**G.  The plaintiff's request for punitive damages is denied.**

The defendants again move to strike the plaintiffs' requests for punitive damages, that the FAC is a mere coverage dispute and fails to "allege facts that Defendants acted with oppression, fraud, or express or implied malice in th[at] dispute." ECF No. 56 at 18. The plaintiffs contend that the "ninety-nine (99) paragraphs of factual allegations" set forth sufficient basis for their prayer for punitive damages. ECF No. 57 at 12.

NRS 42.005 provides that in actions arising for a breach of a duty not arising from contract, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant." A claim for punitive damages requires that the defendant acted with a culpable state of mind and that the conduct exceed mere recklessness or gross negligence. *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008).

Taking the allegations as true, the plaintiffs have set forth sufficient allegations showing oppression, fraud, or malice, so the defendants' motion to dismiss this prayer for relief is denied.

**IV.  Conclusion**

IT IS HEREBY ORDERED that defendants USAA, USAA Casualty, and Garrison's motion to dismiss **[ECF No. 56] is GRANTED in part and DENIED in part as set forth in this order.**

Should the plaintiffs elect to amend for a second time, the new complaint must be filed no later than March 4, 2026.

Dated: February 19, 2026

_____
Cristina D. Silva
United States District Judge

12